MASSACHUSETTS PORT AUTHORITY *vs.* R. S. R. REALTY COMPANY, INC. & others.[1]

Suffolk.   December 10, 1970. — January 14, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Logan International Airport.   Eminent Domain,* Validity of taking.

From an examination of maps in evidence this court decided that within St. 1964, c. 383, § 2, a certain parcel of land lay "westerly of the . . . [then] property line" of the Logan International Airport and therefore could not be taken by eminent domain by the Massachusetts Port Authority.

PETITION filed in the Superior Court on January 3, 1968.

The case was heard by *DeSaulnier, J.*

*Donald R. Grant* for the petitioner.

*Edward U. Lee* for the respondent R. S. R. Realty Company, Inc.

CUTTER, J.   The Authority, by petition under G. L. c. 80A, seeks to establish its right to take by eminent domain certain land and buildings in East Boston (the locus) adjoining the Logan International Airport (the airport). The locus is owned by R. S. R. Realty Company, Inc. (R.S.R.).   The petition recites that the Authority on December 21, 1967, had adopted an order announcing its in-

[1] The other respondents are a mortgagee of the locus and a lessee of part of the locus, described in the opinion.

tention to make the taking. A copy of the order is attached to the petition. The locus and the airport areas in its vicinity are shown on the plan herewith, for the most part traced directly from exhibits in the case. R.S.R. in its answer denies that the Authority has "the right . . . to take . . . its land." The trial judge, after hearing only

the issue of the Authority's right to take the locus, concluded that no such right existed. The case is before us on the Authority's bill of exceptions.

The principal question raised is whether a taking of the locus by eminent domain is prohibited by St. 1964, c. 383, § 2. This statute provides that the Authority, with certain exceptions not here pertinent, shall not "acquire by . . . eminent domain for airport purposes any land above mean high water in . . . [the East Boston] district westerly of the present property line of the . . . Logan International Airport." [2] This question expressly was left undecided with respect to territory near Neptune Road (shown on the sketch plan) in *Loschi* v. *Massachusetts Port Authy.* 354 Mass. 53, 54, 60–61, and fn. 9. There we pointed out that the language of St. 1963, c. 410, substantially reënacted by St. 1964, c. 383, § 2, was "far from clear as applied to the Neptune Road area," where the circumstances were in many respects similar to the situation now before us. [3]

In the present case, the question was presented in general terms by the Authority's exceptions to the trial judge's denial (purportedly because of the judge's findings) of certain requests for rulings. These included requests that the judge rule that the evidence was sufficient to warrant a finding or determination (request no. 25) "that on the effective date of . . . c. 383, § 2, the . . . [locus] did not lie to the 'westerly of the [then] . . . property line of . . . [the airport'] within the meaning of that statute"; (request no. 26) that c. 383, § 2, does "not forbid a taking" of the locus by the Authority; (request no. 27) that on the effective date of c. 383, § 2, "approximately 43 acres of . . . [the airport] lay west of the westerlymost point of the"

---

[2] The section proceeds "nor shall said Authority . . . allow to be built any hangar, or allow the operation of any aircraft, on land owned by it and lying southwesterly of Porter Street and westerly of the existing airport service road running between Porter Street and Maverick Street." This provision relates to land most of which lies southwest of the area shown on the sketch map and has no relation to the present case.

[3] The question did not arise in *Boston* v. *Massachusetts Port Authy.* 356 Mass. 741.

locus; and (request no. 28) that the Authority has the right to take the locus.

1. Maps were introduced in evidence which were the basis of the annexed sketch plan. One of them shows not only the main body of the adjoining airport land west, south, and east of the locus, but also a relatively small crescent shaped parcel of land (the crescent) northwest of the locus between (a) the locus and (b) what is now known as McClellan Highway. The Authority asserts title to the crescent and claims that it is part of the airport. The trial judge found as a fact that part of the crescent was crossed by rapid transit tracks of another authority, the Massachusetts Bay Transportation Authority (M.B.T.A.). Even if title to the crescent was in the (Port) Authority, the trial judge concluded that it was not part of the "airport" as that term is used in St. 1964, c. 383.

The evidence shows that the Authority now owns, and has owned since 1965, the land (formerly owned by Tudor Press) immediately southwest of the locus along McClellan Highway. The Authority also owns substantial tracts of other land west and southwest of the locus all lying west of a line running true north and south through the most westerly point on the locus. Some such tracts immediately adjacent to the locus or to the former Tudor Press parcel are shown on the sketch plan. Other such tracts are not shown on the sketch plan but lie southwest of the airport areas there depicted.[4]

The maps constitute documentary evidence which can hardly be disputed. No evidence recited in the bill of exceptions appears to be inconsistent with the maps taken as a whole.[5] From these maps we are in the same position as the trial judge to determine (a) whether the locus lies

---

[4] The sketch plan shows the westerly portion of the area shown on the sketch map in *Loschi* v. *Massachusetts Port Authy.* 354 Mass. 53, 55. The *Loschi* map also shows the relationship of the locus (southwest and west of Prescott Street) to the airport's runways.

[5] The former Tudor Press parcel seems to have been acquired by the Authority since the preparation of some of the maps in evidence, but is shown as Authority property on others.

to the "westerly of the . . . [1964] property line of" the
airport and (b) how St. 1964, c. 383, § 2, must be applied
to the incontrovertible geographical facts.

2. By examination of the maps we must determine whether
St. 1964, c. 383, § 2, properly interpreted, forbids the Au-
thority to take the locus by eminent domain.[6]  Although
the locus lies to the west of some airport land, its southern
boundary lies east of the northern boundary of adjoining
airport land owned by the Authority in 1964.  In the area
of the locus, the somewhat irregular boundary runs generally
from a little north of northeast to a little south of southwest.
An indentation to the southeast partly encloses the locus.
We said in the *Loschi* case, 354 Mass. 53, 61, fn. 9, that the
Neptune Road area was "almost an enclave surrounded on
three sides by airport land."  The locus certainly is not as
pronounced an enclave, for the Authority's ownership of
property, acquired from Tudor Press in 1965, cannot be
considered in interpreting the 1964 statute.  The locus is
farther north than much of the airport and significant por-
tions of the airport are farther west than any part of the
locus, although these portions lie almost wholly southwest
of it.  The extension of the airport in a northerly and north-
westerly direction near the locus is obstructed, of course,
by the M.B.T.A. and McClellan Highway, a broad main
artery to the north.  These obstructions tend to emphasize
that the locus has become something of an enclave.  If it
became airport property it would not bring the airport ap-
preciably closer to Bremen Street (shown on the sketch
plan) and the settled area northwest of that street, than it
already is.  Thus it would not seem in any significant way
to run counter to any legislative policy to keep the airport
away from settled portions of East Boston, if that is the
policy underlying St. 1964, c. 383, § 2.

---

[6] The 1964 statute (c. 383, § 2) forbids only the acquisition *by eminent
domain* of land "westerly of the . . . [1964] property line" of the airport.
Such land thus may still be acquired by purchase.  Accordingly, if the Au-
thority and R.S.R. could agree on a price, no legislative mandate would pro-
hibit sale of the locus to the Authority.  Despite our conclusion, we assume that
the Legislature, if it wishes to do so, may specifically authorize the Authority
to take the locus by eminent domain, notwithstanding the 1964 statute.

Despite all these considerations, we cannot say that the locus is not westerly of the 1964 airport property line, for the greater portion of it certainly is west of that line on the northeast side of Prescott Street and as it runs in a curve to the south and southeast of the locus. No very significant portion of the pre-1964 airport lies directly west of any of the locus. Apart from the presence of the crescent, discussed in the next part of this opinion, we conclude that c. 383, § 2, precludes the Authority from taking the locus by eminent domain. On balance, this interpretation of § 2, as applied to the facts before us, appears to us most closely to conform with the legislative language.

3. It is argued that the relatively small crescent area between the locus and McClellan Highway prevents the locus from being westerly of the airport property line. We assume (without deciding), first, that the Authority has title to the crescent and, second, that part at least of the crescent was originally acquired for airport use or has reverted to such use. We see no reason for considering whether these assumptions are correct, for the record gives no indication that the 1964 Legislature knew that the crescent existed or (if it did know about it) that it gave its existence any weight. Examination of the exhibits convinces us (a) that such an isolated fragment of land, separated (when the 1964 statute became effective) from the bulk of the airport, could not then reasonably be regarded as within the airport and (b) that the crescent's westerly and northwesterly limits did not constitute any part of the "property line" referred to in St. 1964, c. 383, § 2. The trial judge correctly so concluded.

4. In view of our conclusions, there is no occasion to consider whether the Authority is entitled to make eminent domain takings by the method permitted in G. L. c. 80A. See, however, G. L. (Ter. Ed.) c. 79, § 45; St. 1956, c. 465, § 3, (g), (j), (k), and (p), and § 4, as amended through St. 1958, c. 599, § 3. See also later amendment of § 4 by St. 1967, c. 869, § 6.

*Exceptions overruled.*